## Williams v. Kerbeck Lincoln Mercury

*Paul Auerbach*, for plaintiff.

*Kenneth Shengold, Alfred Sarowitz,* and *Louis Kassen*, for defendants.

MARUTANI, *J.*, February 24, 1976 — Defendants, Windsor-Mount Joy Mutual Insurance Company, Jordon Mutual Insurance Company, Juniata Mutual Insurance Company, trading as "Lincoln Insurance Group" (hereafter "Lincoln Group"), have filed preliminary objections to plaintiff's complaint in assumpsit. The objections are twofold: (a) "Petition to Strike for Lack of Jurisdiction" and (b) "Failure to State [a] Cause of Action."

For purposes of considering these objections, particularly defendants' preliminary objections in the nature of a demurrer, the following chronological events appear.

On November 30, 1973, plaintiff, Shelton Williams ("Williams"), purchased a 1971 Lincoln Continental automobile from one of the other defendants, Kerbeck Lincoln Mercury ("Kerbeck Lincoln"), which placed insurance coverage thereon. Lincoln Group issued insurance policy No. 101915 to plaintiff covering the period December 14, 1973, to December 14, 1974. On September 30, 1974, the said automobile containing personalty, was stolen from the custody and possession of Williams, and was subsequently located in Washington, D.C., on October 11, 1974. Notice of the theft was given by plaintiff to Lincoln Group, although plaintiff does not set forth the date or contents of such notice; however, Lincoln Group does not controvert the fact of notice of the loss having been given.[1] Lincoln Group was notified on October 11, 1974, of the recovery and location of the automobile, and sometime in December of 1974 in-

---

1. See paragraph 11 of Lincoln Group's preliminary objections which are directed to failures (a) "to submit a sworn proof of loss" and (b) "to request an individual appraisal."

spected the automobile, whereupon Lincoln Group offered to pay to Williams repair estimate of $150, less $50 deductible, plus rental charges incurred by Williams to October 8, 1974. This offer was not accepted by Williams. On March 10, 1975, Williams travelled to Washington, D. C., and upon inspection of the automobile concluded that the extent of missing items and damage to the automobile, said to include a broken windshield, additional dents, torn seatcovers, damaged transmission, missing plates, jack and spare tire, etc., totalled $2,103.09.

In their preliminary objections, Lincoln Group recites paragraphs 2 and 5 of the "conditions" to the contract of insurance, reading respectively as follows:

"2. *Appraisal.* If the insured and the company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of proof of loss by the company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the insured or the company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The insured and the company, shall each pay his or its chosen appraiser and shall bear equally the other expenses

of the appraisal and umpire. The company shall not be held to have waived any of its rights by any act relating to appraisal."

"5. *Payment for Loss; Action Against Company.* Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

Lincoln Group thereupon alleges that plaintiff had "failed to comply with the terms and conditions of the contract in the following manner: (a) Plaintiff failed to submit a sworn proof of loss alleging a property loss in the amount of $2,103.09 [and] (b) Plaintiff failed to request an individual appraisal as required by paragraph 2 of the conditions of plaintiff's contract with the defendant."

The issue here is not one of denial of coverage or absence of notice of the occurrence itself; rather, it is one of whether or not plaintiff has complied with the terms of the contract of insurance, and, if not, whether or not compliance has been waived by the insurer or that the insurer is estopped from requiring compliance.[2] No issue has been raised as to

---

2. "An estoppel exists where one by his words or conduct causes another to believe in the existence of a state of facts, inducing reliance thereon in some act of mutual concern, and the inducing person wishes to assert, prejudicially, facts in opposition to those first held out to be true, on which action was taken.": Fedas v. Insurance Co. of the State of Pennsylvania, 300 Pa. 555, 560, 151 Atl. 285 (1930). It may be noted that in reciting this principle of estoppel in Fedas, the issue there was whether or not the insured was estopped as distinguished from an an insurer.

whether or not these conditions precedent are in any way inequitably burdensome.[3]

"Pa. R.C.P. No. 1019(c) requires the plaintiff in a suit in assumpsit to plead the performance of conditions precedent.": Jennison v. Aacher, 201 Pa. Superior Ct. 583, 586, 193 A.2d 769 (1963). Indeed, under Rule 1019(c) it is provided that "it is sufficient to average *generally* that all conditions precedent have been performed or have occurred." (Emphasis supplied.) Plaintiff has not pleaded performance of the conditions precedent of the contract of insurance. See 3 Standard Pa. Pract. (Revised) §132, p. 291, entitled "Actions on Insurance Policies — In General." Nor are there averments of "such facts as would excuse nonperformance [of conditions precedent], or amount to a waiver thereof by the insurance company. . . .": Id., at 292. Some delay or inability to agree upon the amount due would not constitute a waiver by the insurer, for otherwise an insured would be in a position to impose "waiver" merely by being recalcitrant and causing a dispute.[4]

Lincoln Group's preliminary objections challenging "jurisdiction" presumably are directed to jurisdiction of the court; there are no allegations of defective service or lack of service upon Lincoln

3. It is noted, however, that provisions for appraisal in a contract of insurance have been upheld: Ice City, Inc. v. Insurance Company of North America, 456 Pa. 210, 314 A.2d 236 (1974).

4. Compare Gratz v. Insurance Co. of North America, 282 Pa. 224, 127 Atl. 620 (1925), where the insurer gave as its reason for refusal to respond to insured's demand for appraisal that the proofs of loss filed with it so grossly exaggerated the value of the property and the loss as to amount to a fraud sufficient to vitiate the policy.

Group. If the appraisal procedure set forth in paragraph 2 of the contract of insurance be viewed as an arbitration clause which thereby purportedly ousts jurisdiction of the court, it is well established that "arbitration clauses . . . do not affect the jurisdiction of the courts in Pennsylvania.": Mixer, Inc. v. Smith, 229 Pa. Superior Ct. 273, 276, 323 A. 2d 794 (1974).

## ORDER

And now, February 24, 1976, upon consideration of the preliminary objections of Lincoln Group as well as plaintiff 's response thereto, it is hereby ordered and decreed that:

1. Preliminary objections of defendants, Lincoln Group, in the nature of a petition to strike for lack for jurisdiction are denied;

2. Lincoln Group's demurrer is sustained with leave to plaintiff to file an amended complaint within 30 days from date hereof.