389 A.2d 611

**Jay WECHSLER, Plaintiff,**

v.

**Frada Rezet NEWMAN and Donald Newman, Appellants.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Decided July 12, 1978.

Nancy L. Ford, Philadelphia, for appellants.

Gary F. DiVito, Philadelphia, for plaintiff.

Before JACOBS, President Judge and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HOFFMAN, Judge:

Appellants, tenants in an apartment complex owned by appellee, contend that the lower court erred in dismissing their preliminary objections. According to appellants, the lower court lacked jurisdiction to entertain appellee's complaint in ejectment and assumpsit because the parties had entered into a contractual agreement providing for binding arbitration. Because we believe that the lower court did have jurisdiction over the instant dispute, we affirm the order of the lower court.

On June 21, 1973, Charles E. Goldman, owner of the Pastorius Court apartment complex at 501 W. Hortter Street in Philadelphia, entered into a collective bargaining agreement with the Pastorius Court Tenants Council. This agreement constructed a channel for communications between the landlord and his tenants and attempted to regulate issues of common interest to all tenants and the landlord; it bound Goldman's successors,[1] as well as the Tenants Council's individual members, including appellants. Article V incorporated the terms of the collective bargaining agreement into all individual leases between the landlord and council members. Article VI required the landlord to furnish the Tenants Council with information relevant to any request for a rental increase. Article XV of the agreement stipulated that the rents for all council members would remain at the current level until the expiration of their individual leases. During the term of the collective bargaining agreement, the rent for a three bedroom apartment would not exceed $180 a month. The collective bargaining agreement also contained a grievance procedure which covered " . . . any and all disputes between Landlord and any tenant members, between Landlord and Tenants Council

---

1. Appellee became a successor of Goldman when he purchased the apartment complex on July 29, 1974.

involving the interpretation, application, or coverage of this Agreement. . . ." In the event that a dispute arising under the agreement could not be amicably settled, the agreement provided for arbitration in the following language: "Either party may submit any unresolved issues to binding arbitration pursuant to the rules of the Center for Dispute Settlement of the American Arbitration Association." Finally, the agreement provided that it would remain in effect for twenty four months from the date of its June 21, 1973 execution; a proviso stipulated that "[n]inety days prior to this expiration date, the parties shall begin negotiations in good faith to reach a new Agreement."

Appellants, lessees at the time the Tenants Council and Goldman executed the collective bargaining agreement, entered into a new lease agreement with appellee on September 19, 1974. This lease provided that appellants would pay $180 per month rent for a three bedroom apartment for the period commencing October 1, 1974, and expiring September 30, 1975.

On March 27, 1975, appellee sent appellants written notice of the termination of their present lease together with a copy of a new lease which would run from October 1, 1975, to September 31, 1976. Under this lease, appellants' monthly rent would increase to $240. Appellants did not sign this lease.

Prior to the expiration of the collective bargaining agreement, the Pastorius Tenants Council sought to negotiate an extension with appellee. When appellee failed to respond in a manner satisfactory to the Tenants Council, the Council on June 16, 1975, filed a formal request for binding arbitration with the Community Disputes Settlement Panel. The request alleged that appellee had refused to enter into good faith negotiations over an extension of the agreement; for relief, the Council asked an arbitration panel to prohibit scheduled rent increases until the institution and completion of good faith negotiations.

The Council's attempt to resort to arbitration failed.[2]  On November 1, 1975, appellee notified appellants of the termination of their lease, effective December 1, 1975.  *See* The Landlord and Tenant Act of 1951, April 6, 1951, P.L. 69, Art. I, § 250.501(1);  68 P.S. § 250.501(1).  On November 26, 1975, appellee filed a landlord and tenant eviction complaint against appellants in the Philadelphia Municipal Court.  The complaint demanded possession of the apartment because (1) appellants failed to pay the $60 increase in rent for the months of October and November, 1975, and (2) appellants' lease term had expired.  At a January 5, 1976 Municipal Court hearing, appellants requested the court to stay its proceedings in deference to appellants' attempt to pursue arbitration under the collective bargaining agreement.  The court denied this motion and entered a judgment for possession in favor of appellee.

On February 4, 1976, appellant filed an appeal de novo in the Philadelphia Court of Common Pleas.[3]  On February 17, 1976, appellee filed a complaint in ejectment and assumpsit against appellants;  this complaint reiterated the allegations of its Municipal Court counterpart.  Appellee, however, did add a claim in assumpsit for the loss of $240 per month reasonable rental value resulting from appellants' failure to surrender the premises.[4]

**2.**  While both parties assign responsibility to each other for the failure to have an arbitration hearing, the state of the record does not permit us to resolve this conflict.  Suffice it to note that arbitration hearings scheduled for September 23, 1975, and November 4, 1975, did not occur.

**3.**  As a condition of this appeal, the lower court ordered appellants to post a bond in the amount of $360 and, during the pendency of the litigation, to pay the disputed rental increase into an escrow account.  The lower court also stayed appellants' eviction during the instant litigation.

**4.**  Originally, appellee's Municipal Court complaint also contained an assumpsit claim for back rent.  Both parties agree that appellee dropped this claim at the January 5, 1976 Municipal Court hearing.  The record contains no indication that appellee has abandoned the assumpsit claim included in his complaint filed with the Court of Common Pleas.

On March 15, 1976, appellants filed preliminary objections. See Pa.R.Civ.P. 1028, 42 Pa.C.S. § 1028. These objections asserted that appellants' prior resort to the arbitration forum provided by the collective bargaining agreement precluded the lower court's assertion of jurisdiction to hear and determine appellee's complaint. According to appellants, if the arbitration panel determined that appellee had refused to negotiate in good faith over an extension of the collective bargaining agreement, then appellee's rental increase contained in the new lease would be invalid until the institution and completion of good faith negotiations. Because the ejectment and assumpsit proceedings, in turn, were premised upon appellants' failure to sign the new lease requiring payment of the disputed rental increase, the Court of Common Pleas would be deciding the precise issue which the parties had contractually entrusted to an arbitration panel rather than a court. Thus, according to appellants, the collective bargaining agreement stripped the lower court of jurisdiction over the issues which appellee presented for its consideration.

On April 2, 1976, appellee filed an answer to appellants' preliminary objections. Therein, appellee maintained that a contractual arbitration clause does not preempt the subject matter jurisdiction of a Court of Common Pleas over ejectment and assumpsit proceedings. Also, appellee denied that the issues presented to the arbitration panel were congruent with those before the Court of Common Pleas.

While the lower court considered their preliminary objections, appellants also filed a petition to compel arbitration and to stay judicial proceedings until the completion of arbitration. On May 4, 1976, the lower court denied this petition. On June 13, 1977, the lower court dismissed appellants' preliminary objections and ordered appellants to file an answer within 20 days. This appeal followed.

Appellants contend that the lower court erred in dismissing their preliminary objections. According to appellants, the arbitration clause in the collective bargaining agreement divested the lower court of jurisdiction to hear and determine appellee's ejectment and assumpsit complaint.

■ The Act of March 5, 1925, P.L. 23, § 1; 12 P.S. § 672, provides the basis for appellate court jurisdiction to review a lower court's dismissal of preliminary objections.[5]

"Wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments." Under this section, our scope of review is limited to a single question: did the lower court properly determine whether it had jurisdiction? *Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1965); *Studio Theaters, Inc. v. Washington*, 418 Pa. 73, 209 A.2d 802 (1965); *University Square No. 1, Inc. v. Marhoefer*, 407 Pa. 257, 180 A.2d 427 (1962); *Witney v. Lebanon City*, 369 Pa. 308, 85 A.2d 106 (1952); *Grier v. Scientific Living, Inc.*, 253 Pa.Super. 113, 384 A.2d 1254 (1978); *Mixer, Inc. v. Smith*, 229 Pa.Super. 273, 323 A.2d 794 (1974); *Flood v. Borough of Canonsburg*, 28 Cmwlth. 248, 368 A.2d 348 (1977). In resolv-

---

**5.** If the Statutory Arbitration Act, Act of April 25, 1927, P.L. 381, No. 248, § 1 et seq.; 5 P.S. § 161 et seq., rather than common law principles governed the instant arbitration agreement, then an alternative jurisdictional basis for an appeal would have been available. The Statutory Arbitration Act explicitly permits an appeal from an order staying or refusing to stay the trial of a suit or proceeding pending arbitration, or from an order either directing or refusing to direct the parties to proceed to arbitration. See The Statutory Arbitration Act, supra; 5 P.S. § 175(b). However, in the instant case, there is no evidence that the parties expressly or implicitly agreed to apply the Statutory Arbitration Act; therefore, common law rules control disputes concerning arbitration. See *Runewicz v. Keystone, Inc. Co.*, 476 Pa. 456, 383 A.2d 189 (1978); *P. Agnes, Inc. v. Philadelphia Police Home Ass'n*, 439 Pa. 448, 266 A.2d 696 (1970). When parties draft an arbitration agreement governed by common law principles rather than the Statutory Arbitration Act, then a lower court's order refusing to stay proceedings or to compel arbitration is interlocutory and non-appealable. See *P. Agnes, Inc. v. Philadelphia Police Home Ass'n, supra.* Instead, the aggrieved party may only challenge the propriety of the lower court's refusal to stay proceedings or to compel arbitration after the court has entered a final order. See The Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. III, § 302; 17 P.S. § 211.302.

ing this question, our appellate courts have applied the following test: "In *Zerbe Township School District v. Thomas,* 353 Pa. 162, 44 A.2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry,* not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case*; that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined."* *Witney v. Lebanon City, supra* 369 Pa. at 311–12, 85 A.2d at 108 (emphases in the original); *University Square No. 1, Inc. v. Marhoefer, supra.*

■ Our appellate courts, in applying this test, have consistently and emphatically held that a contractual arbitration clause does not affect the subject matter jurisdiction of the trial court and, therefore, does not provide a proper basis for a preliminary objection. See *Chester City School Authority v. Aberthaw Constr. Co.,* 460 Pa. 343, 333 A.2d 758 (1975); *Central Contracting Co. v. C. E. Youngdahl and Co., supra; University Square No. 1, Inc. v. Marhoefer, supra; Witney v. Lebanon City, supra; Mixer, Inc. v. Smith, supra; Flood v. Borough of Canonsburg, supra.* For example, in *Witney v. Lebanon City, supra,* plaintiff contracting company sued Lebanon City in assumpsit to recover expenses incurred in the construction of a reservoir and dam. In

preliminary objections, Lebanon City asserted that the parties had contractually agreed to be bound by an engineer's estimate of the proper measure of compensation or, if the engineer could not resolve this dispute, to submit the matter to binding arbitration. The trial court dismissed these objections. On appeal, our Supreme Court concluded that the trial court had jurisdiction to determine controversies of the general class—assumpsit—to which the suit in *Witney* belonged, and that the court's jurisdiction would not be affected in any way by an ultimate conclusion that the contract bound the parties to abide by the engineer's estimate. Accordingly, the Supreme Court affirmed the order of the lower court dismissing preliminary objections.

In *University Square No. 1, Inc. v. Marhoefer, supra,* the Supreme Court reiterated its adherence to the rule and result of *Witney.* In *Marhoefer,* the lower court dismissed preliminary objections which had maintained that a contractual arbitration clause supplanted the trial court's jurisdiction over an assumpsit action. On appeal, the Supreme Court noted that defendant's contention did raise a question of jurisdiction under 12 P.S. § 672, *supra.* However, the Court summarily answered this question: "It is clear that an arbitration provision in a contract—irrespective of whether it is common law or statutory arbitration—does not affect the jurisdiction of the lower Court." *supra* 407 Pa. at 259, 180 A.2d at 429. *See also Central Contracting Co. v. C. E. Youngdahl and Co., supra; Flood v. Borough of Canonsburg, supra.*

*Mixer, Inc. v. Smith, supra,* represents our Court's most recent consideration of the issue of the impact of a contractual arbitration clause upon a lower court's jurisdiction. In *Mixer,* our Court reversed a lower court order sustaining preliminary objections based upon a contractual arbitration clause. We noted that " . . . while such clauses are statutorily favored,[6] . . . a long line of Pennsylvania

6. See The Statutory Arbitration Act, *supra;* 5 P.S. § 161.

case law holds that arbitration clauses, nevertheless, do not affect the jurisdiction of the courts in Pennsylvania." supra 229 Pa.Super. at 276, 323 A.2d at 795. In sum, private parties cannot contractually alter the rules of jurisdiction which pertain in this Commonwealth.

While *Witney, Marhoefer and Mixer, Inc.* do not preclude a lower court's *deference* to a contractually agreed upon arbitration forum, these cases do firmly establish that an arbitration clause—such as the one in the instant case—will not curtail a lower court's *power* to hear controversies generally within its subject matter jurisdiction. The parties do not dispute that the Philadelphia Court of Common Pleas has subject matter jurisdiction over ejectment and assumpsit cases. Accordingly, we affirm the order of the lower court dismissing appellants' preliminary objections.[7]

Order affirmed.

7. Some cases intimate that the proper disposition of the instant case might be to quash the appeal because appellant has failed to raise the requisite "question of jurisdiction" under 12 P.S. § 672. See *Capezio & Things v. Wynnewood Meredith Corp.,* 455 Pa. 84, 314 A.2d 20 (1974) (Per Curiam) (Dissenting Opinion by MANDERINO, J.) *Chester City School Authority v. Aberthaw Constr. Co., supra.* (Dictum). We recognize that the difference between quashing and affirmance in this case may be semantical rather than significant. Whichever disposition we select, it is quite clear that appellants' preliminary objections were properly dismissed and that the lower court had jurisdiction of the instant dispute, regardless of the arbitration clause. Nevertheless, we believe that, technically, affirmance rather than quashing is the appropriate disposition of the case at bar. As the Supreme Court observed in *University Square No. 1, Inc. v. Marhoefer, supra,* appellants' reliance on a contractual arbitration clause at least raised a *question* concerning the lower court's jurisdiction. Even though the answer to this question is patently clear in light of applicable case law, we should still affirm rather than quash. See also *Flood v. Borough of Canonsburg, supra.*